VIRGIL AND WARNER PRATT v. WILLIAM WRIGHT, ADMR. OF THE ESTATE OF MARTHA PRATT, DECEASED.

1. By a marriage agreement between husband and wife, before marriage, the slaves of the wife were conveyed to a trustee for the benefit of the wife, subject to her sole use and disposition. After the death of the wife intestate, the admr. of the wife brought replevin against the husband, to recover the possession of one of the slaves. It was held:

2. 1. That there is nothing in the subject matter of such contracts, or the situation of the contracting parties, to invalidate it—on the contrary, such agreements are consistent with the policy of our laws, and binding.

3. 2. During the coverture, the effect of such contract is to place the legal ownership in the trustee, and the beneficial interest in the wife, not subject to the control of the husband.

4. 3. On the death of the wife, the legal estate continues in the trustee, for the use and benefit of the personal representatives of the wife, who are to be determined by reference to our statute of descents—Rev. Code, p. 222.

*Bates* and *Allen*, for appellants, cited:

1 Chitty's Pleadings, pages 2, 3; 1 Marshall's Reports, 242, Meredith v. Hickman; Powel on Contracts, 65, Freeman, et al. v. Sir Cleve Mason; Powel on Contracts, 67, Wright v. Lord Cadogan; 1 vol. Mo. Decisions, 667, Gonsolis et ux v. Douchouquette; 1 Chitty, 22, in note, with reference to 6 Johnson, page 112, and Coke Lit., book 51; 7 Johnson's Chancery Reports, page 229, Stewart v. Stewart; Baily v. Wright, 18 Vesey, 49; 3 Term Rep. 618; 1 Williams on Exrs., 244, 273, 439; 1 Atkins' Rep. 458; 3 Atkins, 526, 1 Ve. 5, 15; 1 Wilson's Rep. 168; 1 P. Williams, 381; 7 Johnson, 229; 6 Johnson, 112; 3 Bacon's Abridgment, pages 55, 72, title "Executors and Administrators;" 2 Black. page 515; Com. Dig. Adm. B. 6; Stat. Mo. page 41, section 5; do. 222.

*U. Wright*, for appellee, cited the following authorities:

1 Barnwell and Ald. page 336; 2 vol. Tucker's Com. 438; 5 East, 162; 2 vol. T. Rep. 759; 17 Johnson's Rep. 548; Reeve's Dem. Rel. 12 to 17; 3 Munford, 170; 1 Hen. and Mun. 154; 2 Starkie, 768; 1 vol. Tates Digest; Clancy on Rights, 283.

Opinion of McGirk, Judge.

William Wright, the defendant in error, brought an action of replevin in the Marion circuit court, against the plaintiffs in error, to recover a slave. On the issues the parties went to trial before the court, as to the law and the facts, without the intervention of a jury. The

court found the issue for the plaintiff, Wright, and gave judgment accordingly.

It appears by the bill of exceptions, that in August, 1835, an agreement was made by and between Virgil Pratt and one Martha Wood to enter into marriage; and that about an hour or two before the marriage took place, Virgil Pratt and Martha Wood, together with one John C. Wright, entered into an agreement, signed and sealed by them, as follows:

"This indenture, made this twenty-fifth day of August, 1835, between Martha Wood of the first part, John C. Wright of the second part, and Virgil Pratt, of the town of Palmyra, county of Marion, State of Missouri, witnesseth, that, whereas a marriage is about to take place between Martha Wood and Virgil Pratt, and the said Virgil, for the purpose of securing to the said Martha her property, hereby agrees that she may have full power to convey the same to John C. Wright in trust for her own use and benefit; and the said Martha hereby sells and conveys to the said John C. Wright her negroes, Thomas, Polly, (and others, naming them,) for and in consideration of the sum of one dollar, in trust, for the sole use and benefit of the said Martha, by her to be retained in possession for her own use and benefit, with full power to dispose of the same by will at her decease; and the said John C. Wright hereby agrees, that he will faithfully discharge the duties of the trust aforesaid, and permit the said Martha to have the full use and enjoyment of the said slaves, and with the consent of the said Martha to sell the same; and it is hereby agreed between the parties aforesaid, that the said slaves are not to be subject to the control, or liable for the debts, of the said Virgil Pratt, which may accrue or may have accrued in any manner, directly or indirectly, but that they are to be held by the said trustee for the sole use and benefit of the said Martha. In testimony whereof," &c.

It was also proved that the marriage took place; and that the wife died in February, 1837. There is no dispute about the fact of the plaintiffs in error having the property in possession at the commencement of this suit. Some other verbal testimony was given, but, it seems to me none of it has any relation to the points upon which the court must decide. When the plaintiff closed his evidence, the defendant gave none, but prayed the court to decide by way of instruction:

1. If the deed given in evidence was a valid and binding conveyance, it vested the legal title of the said

13

*APRIL TERM, 1838.*

Pratt
v.
Wright, admr.

By a marriage agreement between husband and wife, before marriage, the slaves of the wife were conveyed to a trustee for the benefit of the wife, subject to her sole use and disposition. After the death of the wife intestate, the admr. of the wife brought replevin against the husband, to recover the possession of one of the slaves. It was held:

slave, Tom, in John C. Wright, and there is no evidence in the cause that such legal title has been divested.

2. If said deed be not a valid and binding conveyance, the legal title of the slave, Tom, remained in Martha Wood, the former owner of Tom; and V. Pratt, by his intermarriage with Miss Wood, and his subsequent possession of the slave, became the lawful owner of said slave.

3. There is no evidence in the cause of any legal title in the plaintiff to the slave in question, and therefore he cannot recover in this action; which decisions the court refused to make, and decided that the said deed vested the legal title of the slave, Tom, in John C. Wright, the trustee, only during coverture, and that at the death of Mrs. Pratt, the legal title passed to her representatives. Several other instructions were asked by the defendants, and given by the court.

The defendants moved the court for a new trial, which was overruled. The reasons for a new trial are, that the verdict was against law, evidence, and the decision of the court.

With regard to the new trial, nothing can be done. The record does not show what the whole evidence was. The court cannot, therefore, know whether the verdict is against the evidence or not; nor can the court know that the verdict is against the law in the whole case, unless the record will show all the facts on which the law arises.

As to the finding of the court as a jury being against the instruction given, I do not see how that is true.

I will now proceed to consider the instructions the court gave in favor of the plaintiff, Wright, and those refused to the defendants.

The first refused was, that if the deed given in evidence be a binding and valid one, then the title of the slave is in John C. Wright, and there is no evidence the title passed out of him. In my opinion the court did well to refuse this instruction. One reason why it was rightly refused may have been, that it affirmed a fact which was not true. It cannot be seen by the record whether or not there was such evidence. If there was such evidence before the court, then the refusal was right. As the matter stands, I conclude the court did right, and its opinion cannot be reversed unless we can see the court did wrong.

The second instruction refused, asks the court to say, if this deed is not valid as a conveyance, then the consequence is that, by the marriage of the parties and

APRIL TERM,
1838.

Pratt
v.
Wright, admr.

the possession of the slaves by Pratt in the lifetime of the wife, on her death the slaves were his. As to the right of Mr. Pratt to the slaves in the case supposed, no one can have any doubt. If there had been a jury in the case, then I could easily see it would be entirely wrong to give the instruction prayed. It would be to refer the question of law to the jury: What is the legal effect of this deed? Did it convey the property to the trustee or not? If the party wished to have the legal effect of the deed ascertained, he should have asked the court to say the deed had no effect to convey the property to the trustee. This being refused, there would be a tangible point which might be corrected; and this being given, then it would be proper to ask the court to declare further that the consequence was, the property on the death of Mrs. Pratt belonged absolutely to the husband; but without this, the whole matter of law, as to the legal effect of the deed, would be by the court referred to the jury without the least light to guide them. For these reasons, I am satisfied there was no error committed by refusing the second instruction. Nor is there any error committed by refusing the third instruction asked; that affirms there is no evidence in the cause to show the plaintiff had any title to the slave. In the first place, the plaintiff had the trust deed before the court; and let it be granted for the present that it furnished no such evidence, yet, for any thing appearing upon the record, there might have been other and good evidence of that matter, and the bill of exceptions no where informs the court that the plaintiff had no other evidence. The refusal to give that instruction might have been right, because the fact affirmed was not true.

I will now proceed to notice the instructions the court gave, which were against the defendants, which in substance are, that the deed of trust vested the legal estate to the slaves in the trustee only during the coverture; and that on the death of Mrs. Pratt, the legal estate passed to her representatives. The instruction stops here, without saying who are the representatives. I am well satisfied the court did not mean that the husband is the representative, otherwise he would have had judgment. I will therefore conclude the court meant that the administator is the proper representative in the first place, whose duty it will be to distribute to the children of the wife, or to her other kin, as the case may require, but not to the husband.

It is insisted, by Mr. Bates and Mr. Allen, that the view

the court took of the law is entirely erroneous. They divide their case into the following points:

1. That the court erred in deciding the deed vested the legal estate in the trustee during coverture, and that on the death of the wife, the legal estate passed to her representatives.

2. That if the deed vested the legal estate in the trustee, immediately upon the death of Mrs. Pratt the entire beneficial interest, which was the use and possession, vested in her husband.

3. That by the statute of descents and distributions, the estate, on the death of Mrs. Pratt, did not vest in the husband, but vested in the distributee, and not in the administrator.

4. The fourth is, that by the common law, when a wife died leaving *choses*, the husband was entitled to them, if he administered, and when he did so, he was not compelled to make distribution; and that our statute of distribution does not in terms repeal the common law, nor can it be done in this case by implication.

5. That a trustee cannot by action at law deprive the *cestui que trust* of the possession of the trust thing.

Mr. Wright, for the defendant in error, in substance maintains:

1. That the deed was valid to pass the estate to the trustee.

2. That on the death of the *cestui que trust*, the trustee's legal estate ceased, because there was no longer any use for it. That all this time nothing vested in the husband.

3. That on the death of the wife, her interest went to her heirs and not to the husband; and that position is founded both on the common law and the statute of descents and distributions.

4. That the administrator is in this case the right person to sue, having in him the legal estate by administration.

For my own convenience, I will consider, first: What was the legal effect of the deed when made, and while the coverture continued?

Second. When the wife died, did the deed cease to operate?

Third. Whether the deed ceased to operate or not?

I shall inquire into the condition of the property immediately on the death of the wife.

The first inquiry is, what effect did the deed have on the rights of the parties to it during coverture?

·It cannot be denied that by the law of the land, parties situated as these parties were, had a right to make the deed. The parties when they made this agreement were able to contract, and no legal disability in regard to any of them existed. This requisite to a good contract being found to exist, the next thing necessary in law is, that the subject matter of the contract be such a thing as the law will permit the parties to contract about. The law will not permit parties to contract that any one of them shall commit murder, larceny, or any other crime; nor will it permit them to contract that one or any of them shall do any thing against its own policy. None of these things, as far as I can see, exists in this case. But if any doubt can at all be raised on any branch of this subject, it must be on the latter thing mentioned; that is, whether the subject matter of the contract is against the policy of the law? It seems to me that the law, so far from regarding contracts of this kind in an unfavorable light, regards them, if I may so speak, with high satisfaction. The law in general professes to have great solicitude for the weaker and more helpless portion of the human race; and these consist principally of the females, whether married or unmarried, and of infants of tender years. In this kind spirit the law will permit jointures and marriage settlements, and has also raised the tenancy by dower. Indeed, it seems to me that but few things can be more agreeable to a generous, just and good man than to provide a safe harbor of retreat for a wife and children, to shelter and protect them against the blasting and withering storms of adversity that often pass over the affairs of men. It seems to me that owing to the ignorance and want of vigilance of some, and to the cupidity of others, none are more emphatically strangers in the land of their nativity than widows and orphan children. But I will say no more on this branch of the subject.

I, therefore, see no objection against the subject matter of this contract. There is one portion of the subject matter of this contract I will give no opinion on, as no question arising out of it exists in this case; and that is, that part of it which seeks to protect the trust property from the future debts of the husband. Whether the laws of the land will subject this property or its proceeds to the debts of the husband, I leave to be discussed when the occasion arises.

Being stisfied as to the validity of this contract, I shall next consider the effect of the same, and this requires

APRIL TERM,
1838.

Pratt
v.
Wright, admr.

1. That there is nothing in the subject matter of such contracts, or the situation of the contracting parties, to invalidate it—on the contrary, such agreements are consistent with the policy of our laws, and binding.

2. During the coverture, the effect of such

APRIL TERM,
1838.

Pratt
v.
Wright, admr.

contract is to
place the legal
ownership in the
trustee, and the
beneficial interest
in the wife, not
subject to the con-
trol of the hus-
band.

but a few words. The agreement professes to put the legal ownership of the slaves in the trustee. This in my opinion it fully accomplishes. The contract professes to secure to the wife the possession and use of the slaves free from the control of the husband. This is also accomplished, so far as a clear legal agreement to do a future thing can be said to perform the thing. But if the trustee neglected his duty in regard to that, and so far as the husband might, if so disposed, in future interfere with the wife's sole use and enjoyment of the slaves, this deed is also sufficient to enable the chancellor to enforce the observance of the agreement in regard to the use and enjoyment. During the coverture, the husband had no direct interest in the use and enjoyment, for the deed says so; though he might by incident have from time to time some advantage from the fact of his wife having a separate fund applicable to her wants, pleasures, or fancy. Then just so far as the wife's kindness to him would permit her to use the property to his relief and advantage, he had a benefit when it occurred, and no further. If a man marry a woman of property, though he cannot use it himself, if she be prudent and well disposed, by a judicious use of such property, she may greatly ease her husband's purse, and this is his good fortune, but still in this he has nothing that amounts to a legal right. The foregoing view places the legal estate of the slaves in the trustee, and the legal benefit in the wife during coverture.

3. On the death
of the wife, the
legal estate con-
tinues in the trus-
tee, for the use
and benefit of the
personal represen-
tatives of the wife,
who are to be de-
termined by re-
ference to our
statute of de-
scents—Rev. Co.
p. 222.

The next inquiry is, what became of the legal estate on the death of the wife? Mr. Wright contends that the death of the wife terminates her use and possession so far as regards her. This I admit. He further contends that a right to the use and possession still lived beyond the life of the wife. This is true also. He then insists that the object of creating the trust estate being accomplished, so far as regarded the sole use and possession of the wife, the legal trust estate passed to and became executed in the use; the legal estate became extinct, and that both immediately, being so united, passed to the administrator for the use and benefit of the distributees of the wife, and that the husband is not one of them. I hold in the article of death and preceding it, the legal estate was beyond doubt in the trustee, and there it yet remains.

The counsel has referred the court to a case in first Barnwell & Alderson, 336, where it is said an English court decided, that when the object of a trust is accom-

plished, the trust estate ends, and the legal estate is executed in the use. The case has not been brought before the court, nor can it now be had; but a note of it is to be seen in 2 vol. of Tucker's Commentaries, 438. The note is good for the principle as stated, yet it is unsafe to decide such a case as this on a mere note; though I see no objection to the doctrine. If the counsel are confident of the matter, and think the case can be had, the court will hear further on that point.

I am not prepared at present to say that at the commencement of this action the legal title was in William Wright, the administrator and plaintiff. But on the contrary, I think it was in John C. Wright, the trustee. The opinion of the circuit court was therefore erroneous. This error would dispose of the present action, but would furnish no light by which the right can be established. The counsel on both sides have expressed a desire to have this case so settled as to be a guide in future. The whole court is of opinion that the point as to the merits is well enough saved by the bill of exceptions.

This brings me to the consideration of my third point, which is, what was the condition and situation of the property immediately on the death of the wife? I have shown who was the owner of the legal estate during the coverture, and I have also shown that the death of the wife did not take that estate out of the trustee, and that in law he is the proper person to sue for any injury done to the property; and the question arises who has the use and benefit of the slaves? The counsel for Pratt insist that by the common law of England, the husband was entitled to the wife's choses, in action, if he used or disposed of them during coverture; but that if he did not so during coverture, he yet might have them by becoming the administrator, and as such he could get them or reduce them to possession, and then he might keep them, as the common law did not compel him to make distribution to the next of kin; and further, that the statute of Charles II. which compels administrators generally to make distribution, expressly exempts the husband from making distribution of his wife's effects. And they further insist that even by the common law, the husband had the right to the wife's choses, in action, on higher ground; that is, if any other person than the husband administered, such person should be a mere trustee for the benefit of the husband; and to support this ground, they refer to

3 Bacon's Abr. title "Admrs." p. 55; 2 Blackstone's Com. 515; Com. Dig. Admr. B. C.

The counsel for the other side insist that by the English law, the husband was not entitled to the wife's choses, in action, by any other mode than by administering, and when he did so, and possessed himself of her choses, he might, like all other administrators, keep them, as there was no law to compel any of them to make distribution; and that the statute of distributions, of Charles II., expressly excepted and excused the husband administrator from the duty of distribution, to which all other administrators were subjected. To support this, they refer to Blackstone's Com. also same pages; to Clancy, page 109, 283, and to Reeve, p. 12 to 17. The counsel for the defendant in error, also relies on the statutes of descents and distributions, Revised Code, 222.

From a patient investigation of the authorities and reasons on both sides, I am satisfied that the use and benefit of the slaves belong to the personal representatives of the wife, whoever they may happen to be, and that the husband as such is not one of them.

Before I proceed to give my views at large, I will pay some attention to the case of Stewart v. Stewart, cited from 7 Johnson's Chan. Rep, 229. In that case it was held by chancellor Kent, that where in a deed of settlement, the husband, after covenanting with a trustee to allow his wife to enjoy her separate property to her own use during coverture, that she might convey the same; and added that he thereby released all his marital rights in and over the same. It was holden that this release was to be construed in connection with the words immediately preceding, and operated only as to his rights during coverture, and did not affect his right as survivor of his wife. This case has been cited to show that in a case like the present, the husband takes the use and benefit as survivor of his wife. It is true the chancellor was of that opinion; and after inquiring a long time how it was that the husband did take, whether as next of kin to the wife, or as survivor, seems to have been of opinion that it was enough to know he did take; though the mode could not be seen, he concludes the husband might take as survivor of the wife. How the husband could take as survivor, I cannot see. It is true the joint owner of a chattel may take by survivorship, but in the case of Stewart v. Stewart there was no joint ownership, for the agreement was that the wife should have the separate use, which to me excludes the idea of a joint owner-

ship. Nor can I see how he can take as next of kin; this word implies consanguinity and not affinity. In the case before us the wife was to have the sole and separate use, not during coverture, nor for any other time, but indefinitely. There was to be no joint ownership, but the deed expressly declares the husband was to have no control whatever. In this case, then, he had no property in the thing, nor participation in the use; he had an incident contingent benefit. It is contingent in this, that if the wife used and controlled the property in such manner that an advantage fell to him, it was his good fortune. The husband, then, in this case, could not, in any sense known to me, be said to take as survivor. Nor do I understand him to be in a situation to take as next of kin; at any rate he is not such in the sense of our statute of descents. Our statute first mentions children as being most worthy in blood, and provides for the ascending and descending lines of kindred to the fourth and fifth degrees, before the husband was ever thought of.

The court, in Stewart's case, seems to conclude, that as it cannot be seen how the husband takes, it follows therefore he takes. My conclusion is the reverse of that. As I cannot see in law how he answers the description and fits the character of the one who is to take, I conclude therefore he does not take at all.

I will now turn to the statute which, in my opinion by a fair reading of it, excludes the husband. No one disputes that in this case the use, possession, and enjoyment of the property is some sort of estate, on which the statute of descents [operates;] and we see by the evidence that the wife had possession, and title to the use and possession. The interest being something capable of passing by descent, I will see what the statute does with it. In page 222, Rev. Code of 1835, by the first section it is declared, that when any person having title to any personal estate undisposed of shall die intestate as to such estate, it shall descend and be distributed in parcenary to his kindred, male and female, subject to the payment of his debts, reserving the widow's right of dower, in the following course:

1. To children or their children. If there be none such, then to the father, mother, brothers and sisters, or their decendants, in equal parts. If there be none such, then to the grandfather, grandmother, uncles, aunts, and their decendants. If there be none such, then to the great grandfathers, mothers, &c. Then the third sec-

APRIL TERM,
1838.

Pratt
v.
Wright, admr.

tion says, in default of all these, then to the husband or wife of the intestate, &c.

If this statute does not place the husband and wife, too, as heir, at a vast distance from the propositus, or person last seized, I am incapable of understanding what will do it. In this case, before the plaintiff in error, as husband, can take, he must push out of his way the host the statute has interposed before him. This he does not attempt to do, by showing there are none such in being. But he insists his right stood first at common law, and that the statute does not repeal his right; and the court should be slow in permitting it by implication. It is a clear rule of the common law, that although there is no repealing clause in a statute, yet, if it raised a new rule so contrary to the common law that both cannot stand together, the common law must yield, and is thereby repealed.

Apply this rule to the case. The husband says, by the common law, he is entitled before every other person to the deceased wife's choses, in action, not by virtue of the fact of being administrator, but because he is or was her husband. Let it be admitted that such is the common law. The first section of the act says the personalty shall *descend and be distributed*—first to the children of the intestate, or their descendants. I ask, are not these rules perfectly at war with each other? The common law, as admitted above, says the husband is first in the line of succession, but the statute says, the children and a vast host of others are first. The statute calls in the kin by blood from the four corners of the earth, to take the estate, property, or whatever it may be, and in default of all such persons, then seems reluctantly to consent that the husband or wife may take. I am of opinion that the administrator of the wife is entitled in the first place to have the possession, use, and usufruct of the slaves. But, for the reasons above stated, he cannot recover in this action; and that the same should be reversed; and the other judges concurring, the same is reversed.